# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

### TAMPA DIVISION

**JEAN PAULEY** and **RICK KROM,**

Plaintiffs,

v.

Case No.: _8:25-cv-2429-TPB-AEP_

**M&T BANK,**

a national banking association with its main
Office  in Buffalo, New York, and conducting
business in Florida,

and

**BLUE COMPASS RV, LLC,**

a foreign limited liability company authorized
to transact business in Florida, with its principal
office at 301 East Las Olas Blvd, Suite 700,
Fort Lauderdale, Florida 33301, and the seller
of the subject RV at its dealership located at
165 Business Park Drive, Lexington, South Carolina,

Defendants.

_____/

## VERIFIED CIVIL COMPLAINT

## FOR VIOLATIONS OF THE TRUTH IN LENDING ACT (TILA) AND REGULATION Z; AND RELATED STATE-LAW CLAIMS

### (Jury Trial Demanded)

## PRELIMINARY STATEMENT AND URGENCY OF RELIEF

**A.**

Plaintiffs Jean Pauley and Rick Krom, a married couple proceeding pro se, bring this Verified Complaint
to enforce rights under TILA, Regulation Z, and related consumer-protection statutes. At consummation
(Oct. 13, 2023), Rick was 65 and Jean 64; at filing in 2025 they are 67/66. The Retail Installment



Contract/Security Agreement ("RIC") for a 2022 Forest River Columbus River Ranch 392MB states on its face: "You agree that the Property will not be used as a dwelling" (p. 3) and "Not for use in transactions secured by a dwelling" (footer p. 5). These disclaimers conflict with TILA's definition of "dwelling" and—because they appear on the face of the assigned contract—create potential assignee liability under 15 U.S.C. § 1641(a) for facially apparent defects. Plaintiffs disclosed—and Defendants knew or reasonably should have known—Plaintiffs' intent to occupy the collateral as their principal dwelling within one year; they did so by May 2024. The RIC granted a purchase-money security interest; because the property is Plaintiffs' principal dwelling, the transaction was "secured by a dwelling" under 12 C.F.R. § 1026.2(a)(19). Plaintiffs seek rescission (if non-RMT), restitution, damages, and equitable relief. As older consumers on fixed benefits, the loss of their principal dwelling constitutes irreparable harm.

**B. Urgency.**

Plaintiffs have lived full-time in the collateral since May 2024. By May 2026 they will rely solely on combined Social Security of about $3,400/month, while monthly obligations of $4,484.03 create a recurring shortfall of $1,084.03 and DTI > 130%[FN1]. Exhibits show Defendants had or should have obtained income/obligation data reflecting imminent retirement, absence of savings, a ~$1,200 truck loan, and recurring lot lease, taxes, and insurance—facts foreclosing a reasonable Ability-to-Repay finding. The ATR Rule (15 U.S.C. § 1639c; 12 C.F.R. § 1026.43(c)) requires a documented, reasonable, good-faith determination using reliable third-party records. ATR applies to dwelling-secured covered transactions whether or not the collateral is attached to real property.

RMT / non-RMT alternatives preserved. Two paths are pled in the alternative. If the Court finds the credit a Residential Mortgage Transaction (RMT), § 1635 rescission does not apply; Plaintiffs proceed for § 1640 damages, ATR/HPML relief, reformation/restitution, and declaratory/injunctive remedies. If the Court finds the credit non-RMT but dwelling-secured, § 1635 rescission applies. Plaintiffs plead in the alternative to preserve both paths and permit complete, non-duplicative relief.

**C.**

Authorities condemn loans structured for non-repayment. See 15 U.S.C. § 1639c(a); 12 C.F.R. § 1026.43(c); Williams v. Walker-Thomas Furniture Co., 350 F.2d 445 (D.C. Cir. 1965); Quicken Loans, Inc. v. Brown, 737 S.E.2d 640 (W. Va. 2012). A "dwelling" includes a residential structure "whether or not attached to real property." 12 C.F.R. § 1026.2(a)(19). Plaintiffs' continuous principal-dwelling use is evidenced by utilities, long-term lot leases, USPS change-of-address, Florida employment/pay, and mail receipt at their site.

**D.**

On Sept. 9, 2025, Plaintiffs served written Notice of Rescission (Ex. H) under § 1635(b)/§ 1026.23 by Certified Mail RRR to M&T (registered agent/headquarters) and Blue Compass (registered agents/principal office/dealership). USPS receipts confirm service (Exs. H-1–H-4). Plaintiffs are willing to tender under court-modified sequencing with offsets (§ 1635(b); § 1026.23(d)(4)). Plaintiffs allege material-disclosure and RTC nondelivery violations extending rescission (non-RMT path). If Defendants contend the deal was an RMT, Plaintiffs do not seek § 1635 rescission but proceed as stated in B above.

**E.**

Plaintiffs also plead equitable/common-law rescission, FDUTPA/SCUTPA relief, and § 1640 damages. They will meet Rule 9(b) particularity for fraud/omissions (who/what/when/where/how), incorporating the RIC and contemporaneous communications. Immediate Rule 65 relief is necessary to prevent repossession and homelessness. Plaintiffs do not seek a windfall; they seek lawful restoration and protection of their principal dwelling. Fee-shifting is sought under § 1640(a)(3) and other applicable law; no punitive damages are sought under FDUTPA. Any punitive request is limited to claims that permit them, subject to due-process guideposts.

---

## I. JURISDICTION AND VENUE

I-1. Federal-Question Jurisdiction (28 U.S.C. § 1331).

This action arises under TILA/Reg Z, including §§ 1635, 1640, 1641, 1639c and 12 C.F.R. pt. 1026. Plaintiffs also assert FCRA § 1681s-2(b) and seek declaratory/injunctive relief under 28 U.S.C. §§ 2201–02. Injuries are localized to this District, where Plaintiffs have resided full-time in the collateral since May 2024 and where servicing/collection/credit effects occurred.

Assignee pathways preserved. Plaintiffs proceed against M&T (i) as creditor if the obligation was initially payable to or table-funded for M&T; and/or (ii) as assignee: § 1641(a) for facially apparent disclosure defects; § 1641(c) for rescission enforceability (non-RMT); and § 1641(g) for assignment-notice violations.

I-1-A. Apparent-on-its-face violations supporting § 1641(a).

(a) the "no dwelling" covenant printed in the body of the RIC (p. 3); (b) the footer on each page stating "Not for use in transactions secured by a dwelling," including on the assignment page (RIC p. 5); and (c) the face-of-document assignment language identifying M&T. These items are apparent on the face of the assigned documents and require no extra-record investigation. Any Right-to-Cancel (RTC) nondelivery contention is asserted against the originating/closing creditor; rescission remains enforceable against an assignee under 15 U.S.C. § 1641(c) (non-RMT).

I-2. Supplemental Jurisdiction (28 U.S.C. § 1367).

The Court has supplemental jurisdiction over related FDUTPA/SCUTPA, unconscionability, and other state-law claims sharing a common nucleus of operative fact. Fraud/omission claims are pled with Rule 9(b) particularity.

I-3. Diversity Jurisdiction (Alternative, 28 U.S.C. § 1332(a)).

Plaintiffs are Florida citizens (domicile since May/July 2024; leases, utilities, Florida employment, USPS COA).

4

M&T Bank is a national bank with its main office in Buffalo, NY (citizen of New York).

Blue Compass RV, LLC is authorized in Florida, principal office Fort Lauderdale; as an LLC, its citizenship is that of each member. Plaintiffs request limited jurisdictional discovery to identify each member's citizenship as of filing and will amend promptly.

The amount in controversy exceeds $75,000 exclusive of interest/costs (amount financed $85,116; total payments > $181,000; approximately $56,608.51 out-of-pocket already incurred; fees/statutory damages; value of injunctive/declaratory relief from either party's viewpoint).

I-4. Venue (28 U.S.C. § 1391; M.D. Fla. Local Rule 1.04).

Venue lies in the Tampa Division because a substantial part of the events/omissions occurred here and Defendants purposefully directed servicing, billing, collection, and credit-reporting into this District; Plaintiffs reside here and the collateral has been Plaintiffs' principal dwelling here since May 2024. For venue, each corporate defendant resides in any district where subject to personal jurisdiction. 28 U.S.C. § 1391(c)(2).

I-5. Personal Jurisdiction (Fla. Stat. § 48.193; Due Process).

Statutory prong. § 48.193(1)(a)1. (business in Florida), (1)(a)2. (tortious acts directed here), (1)(a)7. (contracts to supply services here) are satisfied by Defendants' ongoing servicing, billing, collection, escrow, and credit-reporting directed to Plaintiffs' Florida domicile.

Due-process prong. Defendants purposefully availed themselves of this forum; claims arise out of or relate to their forum-directed conduct; jurisdiction is fair and reasonable under Eleventh Circuit standards.

I-6. Residence and Injury Localization.

Since May 2024, Plaintiffs have continuously used the RV as their principal dwelling in Hillsborough County, Florida. Servicing, billing, escrow practices, and credit reporting affected Plaintiffs here. Forward-looking figures (shortfall/DTI) are pleaded only to support injunctive relief.

I-7. Arbitration / Forum-Selection.

To the extent the credit is a "residential mortgage loan" within 15 U.S.C. § 1639c(e) (pre-dispute arbitration agreements in residential mortgage loans are unenforceable), any pre-dispute arbitration agreement (including delegation) is unenforceable. Alternatively, any arbitration or forum-selection clause is procedurally and substantively unconscionable as applied and incompatible with Rule 65 status-quo relief.

I-8. Choice of Law; Rescission/Liability Framework.

Contractual disclaimers cannot override TILA's statutory definitions; choice-of-law cannot displace federal rights. Florida law governs supplemental claims to the extent consistent with public policy. Rescission is pled only if the transaction is non-RMT within § 1635(e)(1). Assignee exposure is cabined to facial defects under § 1641(a); rescission remains enforceable against assignees under § 1641(c) (non-RMT). Plaintiffs also plead equitable rescission, reformation, restitution, and § 1640 damages to prevent unjust enrichment.

I-8-A. Rule 8(d) alternatives

All federal and state claims, and the RMT/non-RMT classifications, are pled in the alternative to permit the Court to award complete, non-duplicative relief consistent with the evidence and governing law.

I-9. Standing; Injunctive Relief.

Plaintiffs are the real parties in interest (Rule 17). Actual damages total approximately $56,608.51 through September 2025, subject to proof and a running ledger at trial. Plaintiffs seek a preliminary/permanent injunction enjoining collection, repossession/transfer, and new derogatories, and a declaration that while tender is adjudicated under § 1635(b)/§ 1026.23(d)(4) (non-RMT path), no further payments are due. Plaintiffs do not assert preempted state-law credit-reporting claims; FCRA is invoked only for § 1681s-2(b) duties after CRA dispute.

## II. PARTIES

II-1. Plaintiffs.

Jean Pauley and Rick Krom, domiciled in Hillsborough County, Florida, have used the RV as their sole and primary dwelling since May 2024. They maintain long-term lot leases and utilities in their names and have Florida employment history (Krom June 2024; Pauley Aug. 2024). Approximately $56,608.51 out-of-pocket losses and credit harm establish standing.

II-2. Defendant M&T Bank.

A national banking association with main office in Buffalo, NY (citizen of New York). M&T conducts continuous business in Florida and directed statements, billing, and collections into this District. Plaintiffs proceed against M&T as creditor (if initially payable/table-funded) and alternatively as assignee under § 1641(a) (facial defects), § 1641(c) (rescission enforceability, non-RMT), and § 1641(g) (assignment notice).

II-3. Defendant Blue Compass RV, LLC.

Authorized to transact business in Florida; principal office Fort Lauderdale; registered agent CT Corporation, Plantation, FL; dealership at 165 Business Park Dr., Lexington, SC (site of origination/closing). As an LLC, citizenship tracks its members; Plaintiffs request limited discovery to identify each member's citizenship and will amend.

II-4. Disclaimer / Choice-of-Law Context.

The RIC's no-dwelling and "Not for use …" provisions (pp. 3, 5) and South Carolina choice-of-law clause cannot override TILA/Reg Z. These terms evidence misclassification and do not bar federal claims.

---

## SECTION III-0 — DEFINED TERMS & ABBREVIATIONS (ALPHABETICAL)

APOR — Average Prime Offer Rate.

APR — Annual Percentage Rate.

ASSN-1 — Assignment/endorsement page(s) identifying same-day transfer "to the order of M&T Bank."

ATR — Ability-to-Repay.

BC-WARR-1/-2 — Warranty registration correspondence regarding retro-activation/timing.

CFPB — Consumer Financial Protection Bureau.

CFPA — Consumer Financial Protection Act.

C.F.R. — Code of Federal Regulations (e.g., 12 C.F.R. pt. 1026).

CRA(s) — Consumer Reporting Agency/Agencies.

DAM-1 — Running damages ledger.

DEP-1 — Depreciation printouts (e.g., NADA/KBB) for the unit/model/year.

DJA — Declaratory Judgment Act (28 U.S.C. §§ 2201–02).

DMV — Department of Motor Vehicles (titling/perfection).

DTI — Debt-to-Income ratio.

FAA — Federal Arbitration Act.

FCRA — Fair Credit Reporting Act (15 U.S.C. §§ 1681 et seq.).

FDUTPA — Florida Deceptive and Unfair Trade Practices Act.

FFIEC — Federal Financial Institutions Examination Council (APOR/rate-spread tools).

FR-Y — Federal Reserve Y-series regulatory reports (e.g., FR Y-9C).

HPML — Higher-Priced Mortgage Loan.

JEP-Decl. — Declaration of Jean Pauley.

LE/CD — Loan Estimate / Closing Disclosure (TRID forms; no TRID claim pled).

M.D. Fla. — U.S. District Court, Middle District of Florida.

MLO — Mortgage Loan Originator.

MROs — Mortgage-Related Obligations (e.g., taxes/assessments as applicable under state law, creditor-required hazard insurance, long-term lot/space rent).

NBA — National Bank Act.

NMLS — Nationwide Multistate Licensing System (tolling discovery proof).

OCC — Office of the Comptroller of the Currency.

PI — Preliminary Injunction (Fed. R. Civ. P. 65).

Reg Z — Regulation Z (12 C.F.R. pt. 1026).

RESC-1 — Rescission notice packet (identifiers, mailing proofs, addresses).

RIC — Retail Installment Contract/Security Agreement (10/13/2023).

RIC-PKT-1 — Produced closing packet for the RIC (RTC absence).

RLK-Decl. — Declaration of Rick Krom.

RMT — Residential Mortgage Transaction.

RRR — Return Receipt Requested (Certified Mail).

RTC — Right to Cancel / rescission notices (e.g., Model H-8/H-9).

SAFE — Secure and Fair Enforcement for Mortgage Licensing Act.

SCUTPA — South Carolina Unfair Trade Practices Act.

9

SEC — U.S. Securities and Exchange Commission.

SJ — Summary Judgment.

SOL — Statute of Limitations.

SSA — Social Security Administration.

TILA — Truth in Lending Act (15 U.S.C. §§ 1601 et seq.).

TRID — TILA-RESPA Integrated Disclosure (disclaimed).

TRO — Temporary Restraining Order (Rule 65).

UCC (Art. 9) — Uniform Commercial Code, Article 9.

UDAAP/UDAP — Unfair, Deceptive, or Abusive Acts or Practices / Unfair or Deceptive Acts or Practices.

U.S.C. — United States Code.

USPS — United States Postal Service (Certified Mail/return receipts).

---

## SECTION III-A — STATUTES OF LIMITATIONS, REPOSE & EQUITABLE TOLLING

Discovery dates.

**III-0. Jean Pauley completed the 20-hour SAFE Comprehensive Mortgage Loan Originator pre-licensing course on Nov. 24, 2024 (Exh. CE-Shop Certificate of Course Completion — Pauley) and first became aware of the TILA/Reg Z violations on Feb. 22, 2025 upon taking/passing the SAFE MLO National Component with Uniform State Content Florida exam (Exh. NMLS SAFE MLO Test). Rick Krom completed the 20-hour course on Dec. 19, 2024 (Exh. CE-Shop Certificate of Course Completion — Krom) and on that date likewise learned of the violations. As part of her**

**diligence, on 12/23/2024 Pauley electronically submitted her first CFPB complaint, Complaint No. 241223-17585527. These are the operative discovery dates invoked for equitable tolling (federal) and delayed accrual (state) where permitted.**

**III-00.** FCRA discovery (exact words). "An action … may be brought … not later than the earlier of 2 years after the date of discovery by the plaintiff of the violation … or 5 years after the date on which the violation … occurs." 15 U.S.C. § 1681p (emphasis added). (TILA's § 1640(e) contains no statutory discovery rule; tolling is by equitable doctrines based on concealment and diligence.)

## A. TILA Damages — 15 U.S.C. § 1640(e).

One-year from the occurrence; the occurrence here is consummation (Oct. 13, 2023). Plaintiffs plead equitable tolling to Dec. 19, 2024 (Krom) and Feb. 22, 2025 (Pauley) → one year runs to Dec. 19, 2025 (Krom) and Feb. 22, 2026 (Pauley). Channels: disclosure/RTC/material-disclosure (non-RMT), ATR (§ 1639c/§ 1026.43), HPML-escrow (§ 1026.35/§ 1639d), § 1641(g), and fees (§ 1640(a)(3)).

B. TILA Rescission — 15 U.S.C. § 1635(f) (repose; not tolled).

Consummation 10/13/2023 → repose 10/13/2026. Notice mailed 09/09/2025 preserves rescission under Jesinoski, with tender sequencing under § 1026.23(d)(4). Rescission is sought only if non-RMT.

## C. FDUTPA / SCUTPA.

FDUTPA 4 years (Fla. Stat. § 95.11(3)(f)); Florida fraud accrual § 95.031(2)(a).

SCUTPA 3 years (S.C. Code § 39-5-150); discovery rule § 15-3-535. Damages: FDUTPA actual + fees; SCUTPA actual, trebling for willfulness.

## D. FCRA — §§ 1681s-2(b), 1681n, 1681o.

SOL per § 1681p quoted above (earlier of 2-years-after-discovery / 5-years-after-violation). Damages: actual, and for willfulness statutory/punitive, plus fees.

**E. Other state/common-law claims.**

Florida fraud 4 years (§ 95.11(3)(j)) with § 95.031(2)(a) delayed discovery; South Carolina fraud 3 years (§ 15-3-530(7)) with § 15-3-535 discovery rule. Unjust enrichment/equitable restitution: often 4 years in Florida (§ 95.11(3)(p)); equitable accrual.

**F. Complete monetary pathways and timing.**

(1) TILA § 1640 damages (channels above) — to 02/22/2026 (Pauley) / December 2025 (Krom) under pled tolling; conservatively plead the earlier date as a backstop.

(2) Rescission-aligned restitution/offsets — notice 09/09/2025; repose 10/13/2026.

(3) FDUTPA actual + fees — 4 years (tolling pleaded).

(4) SCUTPA actual; trebling for willfulness — 3 years (discovery rule).

(5) FCRA furnisher liability — § 1681p (2-year discovery / 5-year outside).

(6) Common-law fraud (if separately pled) — FL 4 years / SC 3 years (discovery rules).

(7) Unjust enrichment / equitable restitution — FL often 4 years; equitable accrual; no double-counting with rescission offsets.

**G. Procedural safeguards.**

Rule 8(d) alternatives preserved; status-quo injunction sought while SOL/tolling issues are adjudicated. Assignee liability under § 1641(a) expressly limited to facial defects; § 1641(c) rescission enforceability (non-RMT) preserved. No FCRA injunction is sought; any injunction requested is under TILA/DJA/Rule 65 only. No double-counting across TILA, FDUTPA/SCUTPA, rescission-restitution, and FCRA.

**(Plaintiffs' verbatim)**

Plaintiffs first learned of the TILA/Reg Z violations well after the 10/13/2023 closing: Pauley completed the 20-hour SAFE course on November 24, 2024 (Exh. CE-Shop — Pauley) and became aware on February 22, 2025 upon taking/passing the SAFE MLO National exam (Exh. NMLS SAFE MLO Test);

Krom became aware on December 19, 2024 when he completed the 20-hour SAFE course (Exh. CE-Shop — Krom). As part of her prompt diligence, Pauley electronically submitted a CFPB complaint on December 23, 2024 (CFPB Complaint No. 241223-17585527). Plaintiffs plead equitable tolling of TILA's one-year damages period, 15 U.S.C. § 1640(e), based on Defendants' concealment and Plaintiffs' diligence; rescission repose § 1635(f) is not tolled and was preserved by written notice mailed 09/09/2025. For FCRA, Congress codified discovery accrual: an action must be brought "not later than the earlier of 2 years after the date of discovery by the plaintiff of the violation … or 5 years after the date on which the violation occurs," 15 U.S.C. § 1681p. State-law limitations (FDUTPA four years, Fla. Stat. § 95.11(3)(f); SCUTPA three years, S.C. Code § 39-5-150) are pleaded with delayed discovery and fraudulent-concealment where permitted (Florida fraud accrual § 95.031(2)(a); South Carolina discovery rule § 15-3-535).

---

## Section III-1 — Threshold Classification and Governing Framework

Quick reference. A concise, hearing-ready outline with pinpoint citations appears as Appendix A (One-Page Hearing Script), appended after Section X (Certificates).

### III-1-A. The Threshold Question for the Court

The central issue is whether the October 2023 credit was secured by Plaintiffs' principal dwelling or merely a "vehicle loan." "Consummation" occurred October 13, 2023 at the Lexington, South Carolina dealership when Plaintiffs became contractually obligated. See 12 C.F.R. § 1026.2(a)(13). Defendants then purposefully directed servicing, billing, collection, and credit-reporting to Plaintiffs in Florida, where Plaintiffs have used the collateral as their principal dwelling since May 2024. Those forum-directed activities supply specific jurisdiction and venue because the claims arise out of or relate to the Florida-directed servicing/collection/credit effects, and exercising jurisdiction is fair and reasonable.

### III-1-B. Plaintiffs' Position

Substance governs. The fifth-wheel was purchased for—and used as—Plaintiffs' principal dwelling. TILA/Reg Z treat such credit as "secured by a dwelling," triggering rescission (if non-RMT), ATR, and HPML duties. One month before this closing, Vanderbilt Mortgage denied a housing application—an underwriting red flag. M&T nonetheless approved a 20-year, 8.74% APR, ~$85k purchase-money obligation and misclassified it as a vehicle loan. See Exh. D (Vanderbilt adverse-action).

Creditor/assignee pleading (in the alternative). The obligation was initially payable to, or table-funded for, M&T (creditor status under 15 U.S.C. § 1602(g); 12 C.F.R. § 1026.2(a)(17)). If not, M&T is at least an assignee with: (i) § 1641(a) exposure for facially apparent defects; (ii) § 1641(c) rescission enforceability (non-RMT); and (iii) § 1641(g) assignment-notice duties. The transaction was a closed-end consumer credit covered by § 1026.43(b)(1).

Remedies even if RMT. If the Court deems the credit an RMT (eliminating § 1635 rescission), ATR/HPML still applied and were violated; § 1640 damages, reformation/restitution, and declaratory/injunctive relief remain available. Rescission is the only remedy affected.

### III-1-B-i. Clarifications & Incorporated Materials

(a) Adverse-action letter context (no inter-bank-sharing theory). Plaintiffs' theory does not rely on inter-bank sharing. It rests on misclassification and ATR verification failures.

(b) Declarations & RIC exhibits. Plaintiffs incorporate RLK-Decl., JEP-Decl., and RIC-1 through RIC-5. Pin cites below refer to those exhibits.

(c) Initial-payee / table-funding evidence. RIC-5 states "to the order of M&T Bank"; same-day assignment endorsements appear at Exh. ASSN-1. These facts support the reasonable inference that the obligation was initially payable to, or table-funded for, M&T.

(d) Alternative pleading (RMT/rescission tension).

• **Path 1** (intent-to-occupy within one year): Under Supp. I, § 1026.2(a)(24)-3, a home intended to become the principal dwelling within one year is treated as such at consummation. If the Court so finds, ATR/HPML and § 1640 damages apply; only § 1635 rescission would drop out.

• **Path 2** (non-RMT): If the Court requires actual principal-dwelling status at consummation and finds it was not yet Plaintiffs' principal dwelling, the loan is non-RMT dwelling-secured, no § 1026.23(b) notices were delivered, and rescission lies.

**Either way, § 1640 damages and equitable relief remain available.** RIC-5 and title Exh. T tying M&T to the transaction further support creditor/assignee theories.

**(e)** Labels don't control. Regardless of label, the same facts establish ATR and (if first-lien is found) HPML violations with § 1640 remedies.

**(f)** Original-creditor vs. assignee. If M&T is not the original creditor, Plaintiffs proceed under § 1641(a)/(c)/(g) and state-law assignment principles. § 1641(a) is cabined to face-of-document defects (e.g., no RTC forms in the packet; dwelling-disclaimer footers; 20-year structure without required dwelling protections). No extra-record investigatory duty is alleged.

### III-1-C. Statutory & Regulatory Framework (Targeted)

Dwelling. 15 U.S.C. § 1602(v); 12 C.F.R. § 1026.2(a)(19) (includes a mobile home or trailer used as a residence).

Principal dwelling—intent within one year. Supp. I, § 1026.2(a)(24)-3 (intent to occupy within a year → principal-dwelling treatment at consummation).

Rescission scope. Official Interp. to § 1026.23 confirms rescission may apply to structures classified as personalty if used as a principal dwelling.

ATR. 15 U.S.C. § 1639c; 12 C.F.R. § 1026.43(c) (documented, reasonable, good-faith determination using reliable third-party records; no collateral-based underwriting).

### III-1-D. Plaintiffs' Facts at Origination

Intent & actual use. Plaintiffs planned to make the unit their principal dwelling within one year and, in fact, did so by May 2024 (utilities/lot leases in Plaintiffs' names; USPS COA; Florida employment/pay). That satisfies Supp. I, § 1026.2(a)(24)-3.

Functional dwelling characteristics. The Columbus River Ranch has full kitchen/bath/sleeping, HVAC, and permanent-living functionality.

Evidence of dwelling status. Long-term leases, utility bills, USPS COA, employment/pay records, and photos (Exhs. A–C) corroborate principal-dwelling use. Titling/registration conventions do not control the federal "dwelling" analysis; actual use does.

### III-1-E. Closing-Desk Mechanics (What Occurred / Didn't)

Occurred. Plaintiffs executed the RIC (8.74% APR; 240 months) (Exh. RIC-1).

Footers & covenant. Every page bears "Not for use in transactions secured by a dwelling"; the body states "You agree that the Property will not be used as a dwelling." (Exhs. RIC-1–RIC-5). Boilerplate cannot waive TILA protections; emergency waivers require § 1026.23(e).

Point-and-sign. Finance manager Scott Marshall pointed to signature/initial lines; he did not explain the 20-year term/total of payments, the no-dwelling clause, or mortgage-related obligations (applicable taxes/assessments, creditor-required hazard insurance, long-term lot/space rent). No keepable pre-consummation set was provided. See 12 C.F.R. § 1026.17(a)–(b); RLK-Decl.; JEP-Decl.

### III-1-F. What Defendants Failed to Do (and Why It Matters)

Because Defendants misclassified the transaction, they failed to:

1.    deliver § 1026.23 RTC (if non-RMT);

2.    make/document a § 1026.43 ATR determination using reliable third-party records (SSA awards, bank statements, tax filings, lot-rent obligations, creditor-required insurance, and any applicable taxes/assessments under state law);

**3.**      establish HPML escrows under § 1026.35(b) if the Court finds the security interest first-lien and the APR–APOR spread met the threshold; and

**4.**      provide accurate material disclosures in a form the consumer may keep before consummation, §§ 1026.17–.18.

On these facts—fixed Social Security, a ~$755 RIC payment, a ~$1,200 truck loan, creditor-required hazard insurance, applicable taxes/assessments, long-term lot rent, plus negative residual income—no reasonable ATR finding could be made. Collateral-based underwriting is prohibited. § 1026.43(c)(1).

### III-1-F-i. RTC Delivery Mechanics

The creditor/closing-desk agent had to: (i) deliver keepable material disclosures before consummation (§§ 1026.17–.18); (ii) for non-RMT dwelling-secured credit, deliver two RTC copies to each obligor (§ 1026.23(b)(1); nondelivery extends rescission, § 1026.23(a)(3) n.48); (iii) make a documented ATR determination (§ 1026.43(c)); and (iv) if first-lien HPML, establish escrow before consummation (§ 1026.35(b)).

### III-1-F-ii. Limitations & Tolling (Dates Pinned; No Over-Commitment)

Plaintiffs discovered the TILA/Reg Z violations on 12/19/2024 (Krom — CE-Shop Certificate of Course Completion) and 02/22/2025 (Pauley — SAFE/NMLS exam; Exh. NMLS SAFE MLO Test; Pauley's course completion on 11/24/2024 — CE-Shop Certificate). Pauley's diligence is further evidenced by her CFPB complaint filed electronically on 12/23/2024 (CFPB Complaint No. 241223-17585527). Plaintiffs plead equitable tolling of § 1640(e) to those dates; § 1635(f) repose is not tolled and was preserved by written notice 09/09/2025. FDUTPA (4 years) and SCUTPA (3 years with discovery rule) are timely under pleaded discovery. (ECOA is referenced for context only; Plaintiffs do not assert an ECOA count here.) Plaintiffs could not reasonably discover earlier because misclassification and nondelivery of keepable disclosures affirmatively concealed dwelling-secured rights.

### III-1-F-iii. No RTC Forms Delivered

Two obligors signed; zero RTC copies were delivered to either. Exh. RIC-PKT-1 shows none.

### III-1-F-iv. Diligence & Warranty Discovery (Corrected Timeline)

Dealer failed to register the VIN as "sold." On 09/27/2024 the one-year warranty was retro-activated to 10/13/2023, leaving 16 days of coverage. Plaintiffs had already incurred repair costs and sought reimbursement (Exhs. BC-WARR-1/-2). This supports concealment and diligence and ties to the same closing-desk omissions.

### III-1-F-v. Vehicle-form Disclosures Were Materially Deficient

No keepable pre-consummation set reflecting the true 20-year schedule and housing-related obligations (creditor-required hazard insurance, any applicable registration/personal-property taxes under state law, annual warranty renewal costs, and long-term lot rent) was provided, contrary to §§ 1026.17–.18.

### III-1-F-vi. Rescission Mechanics & Proof

Notice mailed 09/09/2025 satisfies Jesinoski; tender may be sequenced under § 1026.23(d)(4) with offsets. Exh. RESC-1 identifies parties, account/contract identifiers, collateral, and consummation date.

### III-1-G. Why This Is Not a Vehicle Loan

Substance over labels. CFPB interpretations control: actual principal-dwelling use governs, not titling or a boilerplate covenant. See, e.g., Purtle v. Eldridge Auto Sales, Inc., 91 F.3d 797 (6th Cir. 1996); In re Cromwell, 461 B.R. 99 (Bankr. D. Mass. 2011) (persuasive authority). Under Article 9, the consumer-goods label does not control federal "dwelling" status.

### III-1-H. Duties Triggered If Treated as a Dwelling Loan

Required: §§ 1026.17–.18 disclosures; § 1026.23 RTC (if non-RMT); ATR (§ 1639c / § 1026.43); and, if the Court finds a first-lien HPML, escrow under § 1026.35(b). "Mortgage-related obligations" include creditor-required hazard insurance, any applicable taxes/assessments under state law (including personal-property/registration obligations where applicable, annual warranty renewal costs), and long-term lot/space rent.

First-lien & APOR precision (preserved). On information and belief, the security interest functioned as first-priority at consummation; Exhibit T lists M&T on title issuance. Alternatively, if the interest is deemed not first-priority, Plaintiffs plead the applicable subordinate-lien HPML threshold. Plaintiffs reserve precise APOR spread calculations to Exhibit E and expert proof at summary judgment. Small-creditor/rural exemptions do not apply to M&T based on publicly available size/volume.

Scope caveat preserved. If the Court holds § 1026.35(b) inapplicable to this collateral, Plaintiffs seek equitable reformation/restitution and FDUTPA/SCUTPA alternatives, without double-counting.

## Section III-2 — If the Court Treats the Loan as a Vehicle Loan

FDUTPA/SCUTPA apply as generally applicable anti-deception frameworks; no NBA/OCC order affirmatively authorizes the challenged conduct, and Barnett preemption is not implicated. Florida has the significant relationship: Plaintiffs' residence, servicing/collection/credit effects, and injury. Rule 9(b) particulars are pled (who/what/when/where/how), including the no-dwelling covenant placement (RIC-3, right column) and dwelling-disclaimer footers (RIC-1–RIC-5 bottom margin). Remedies: restitution/actual damages, fees, and SCUTPA trebling for willfulness (no punitive under FDUTPA). Public-interest factors support prospective relief.

## Section III-3 — If the Court Treats the Loan as a Dwelling Loan

Definitions & coverage. "Dwelling" includes a trailer used as a residence; intent to occupy within one year treats it as principal dwelling at consummation. § 1026.43(b)(1) covered transaction.

Duties. Material disclosures; RTC if non-RMT; ATR; and HPML escrow if first-lien and spread meets threshold.

APOR proof. Exh. E (FFIEC APOR tables and calculator) will show the APR–APOR spread met the threshold on the applicable rate-set date; Plaintiffs expressly reserve the precise number to the exhibit and expert proof. If spread were found below the threshold, ATR violations remain.

---

### Section III-4 — If the Court Treats the Loan as Neither Vehicle Nor Dwelling

Equitable/UDAP fallback. Misclassification and omissions support restitution, injunctive relief, unjust enrichment, and declaratory reformation; order status-quo preservation and an accounting with set-offs/credits as justice requires.

---

### Section III-5 — Assignee Liability

Direct and assignee liability. M&T's direct/original-creditor liability is primary if initial-payee/table-funding is found. Otherwise, Plaintiffs proceed under § 1641(a) for apparent-on-its-face defects limited to what is printed on the assigned documents (the "no-dwelling" covenant at RIC p. 3; the "Not for use in transactions secured by a dwelling" footer, including on the assignment page at RIC p. 5; and the face-of-document assignment language), under § 1641(c) for rescission enforceability (non-RMT), and under § 1641(g) for assignment-notice duties. State-law assignment principles provide equitable backup (reformation/lien release to prevent unjust enrichment).

---

### Section III-6 — Remedies (and Punitive-Damages Boundaries)

Strict-liability TILA remedies. Absence of material disclosures/RTC triggers § 1640 remedies; § 1635(b) voids the security interest by notice (if non-RMT), with § 1026.23(d)(4) tender sequencing and offsets.

Damages to date. Actual damages total approximately $56,608.51 through September 2025, subject to proof and a running ledger at trial.

Punitive boundaries. No punitive under FDUTPA; SCUTPA trebling for willfulness; common-law punitive only upon leave under Fla. Stat. § 768.72, subject to Gore/State Farm guideposts.

Arbitration/forum. If the credit is dwelling-secured, 15 U.S.C. § 1639c(e) bars pre-dispute arbitration (and delegation). Alternatively, the clause is unconscionable as applied.

Clear-title mechanics (on rescission). Lien release, clean title issuance, account balance to zero, cessation of repo/collection, and appropriate credit-reporting corrections; defendants bear administrative costs; default mechanism via order to titling authority.

---

## SECTION III — CONCLUSION

### III-Conclusion-1. Requested Relief

Regardless of classification—vehicle, dwelling, or neither—Defendants' scheme is unlawful. TILA, Regulation Z, FDUTPA, SCUTPA, unconscionability, and equity converge: the loan is rescindable where permitted, damages are recoverable, and punitive/treble relief is available as authorized. Venue and personal jurisdiction are proper based on consummation in South Carolina and ongoing harmful effects and residence in Florida, including credit reporting and collection activity directed into this forum.

Plaintiffs respectfully request: (i) rescission and reformation declaring the RIC void as misclassified; (ii) vesting of title to the Columbus River Ranch fifth-wheel in Plaintiffs free and clear of any lien or encumbrance, with tender (if any) sequenced under § 1026.23(d)(4) and netted against restitution/set-offs; (iii) restitution and damages as pled; (iv) Plaintiffs seek costs and, if represented by counsel, reasonable attorney's fees under 15 U.S.C. § 1640(a)(3) and applicable law; (v) punitive damages on the common-law claims (upon leave under Fla. Stat. § 768.72) and treble damages under SCUTPA where authorized; and (vi) an order directing the appropriate titling authority to record lien release and issue a clean certificate of title reflecting Plaintiffs' sole ownership free and clear, consistent with § 1635(b) and § 1026.23(d)(4). Plaintiffs also request an order enjoining collection/repo efforts and requiring furnishers to apply appropriate dispute codes and accuracy procedures during the pendency of this action, without

compelling any particular tradeline content. Plaintiffs seek actual damages and fee-shifting as authorized; punitive damages are not sought under FDUTPA.

III-Conclusion-2. Conclusion Addendum (Scope of Market-Cap Allegations)

Allegations regarding M&T's size are offered solely for punitive-damages calibration and do not bear on liability findings.

---

## SECTION IV — COUNTS

Global incorporations and venue/localization. Plaintiffs incorporate Sections I–III and all referenced Exhibits. Plaintiffs reside and have paid from 1431 S. Kingsway Road, #32, Seffner, Florida 33584 (Hillsborough County, Tampa Division) since May 2024; derogatory credit effects and collections activity were directed to this District. The Retail Installment Contract/Security Agreement dated October 13, 2023 ("RIC") financed a 2022 Forest River Columbus River Ranch 392MB, VIN 4X4FCMR21N6013478, for 240 months at 8.74% APR; amount financed $85,116 with total payments > $181,000 if carried to term. The RIC contains: (i) the printed covenant "You agree that the Property will not be used as a dwelling" (p. 3); and (ii) the footer "Not for use in transactions secured by a dwelling" (pp. 1–5). The closing occurred at Blue Compass RV – Lexington, 165 Business Park Dr., Lexington, SC 29072, conducted by finance/closing manager Scott Marshall in a "point-and-sign" presentation. Plaintiffs disclosed intent to occupy within one year and in fact did by May 2024; utilities and a long-term lot lease were placed in Plaintiffs' names and a USPS change-of-address was filed to the RV location. Plaintiffs' Notice of Rescission (non-RMT alternative) was mailed 09/09/2025 by Certified Mail RRR, identified Loan Account No. 110-001-6897273-0001 and RIC No. 9495931/20232761657000, and was served on M&T Bank's registered agent and headquarters and Blue Compass's Florida/South Carolina agents and principal office/dealership, as shown in the affidavit and USPS receipts. The certificate of title lists M&T Bank as first lienholder at issuance (Exh. T), and RIC p. 5 reflects assignment to the order of M&T Bank at consummation (Exh. RIC-5). Plaintiffs also plead § 1641(g) assignment-notice noncompliance as an alternative federal claim where applicable.

22

## COUNT I

## VIOLATION OF THE TRUTH IN LENDING ACT (TILA) AND REGULATION Z (RESCISSION &/OR DAMAGES)

(15 U.S.C. §§ 1635, 1640; 12 C.F.R. pt. 1026 — Against All Defendants; Rule 8(d) alternatives preserved)

### A. Parties, Transaction, Channel, and Incorporation

Plaintiffs incorporate the materials above and Exhs. RIC-1–5 (TILA box/footer; itemization/amount financed; dwelling-use prohibition; tax/assessment duty; assignment to M&T on p. 5). On information and belief, the obligation was initially payable to/for M&T Bank with same-day assignment (table-funding or designated immediate acquisition), making M&T a TILA "creditor," or, in the alternative, an assignee with facial-defect exposure; Plaintiffs also assert § 1641(g) where assignment-notice was deficient. For avoidance of doubt, Plaintiffs attach/identify the endorsement/assignment on RIC p. 5 in full and cite 12 C.F.R. § 1026.2(a)(17)(i) (a "creditor" includes the person to whom the obligation is initially payable) and 15 U.S.C. § 1641(c) (rescission enforceable against assignees).

### B. Core Framework and Alternative Paths

A "dwelling" includes a trailer/mobile home used as a residence, whether or not attached to real property. "Consummation" occurs when the consumer becomes contractually obligated. For non-RMT, dwelling-secured credit, the creditor had to provide, before consummation: (i) keepable material disclosures and (ii) two copies of the Notice of Right to Cancel ("RTC") to each obligor; nondelivery extends rescission up to three years. For any dwelling-secured covered transaction, the creditor must make and document a good-faith Ability-to-Repay (ATR) determination using reasonably reliable third-party records (including mortgage-related obligations such as taxes/assessment equivalents, creditor-required hazard insurance, and long-term lot/space rent). If the APR–APOR spread met first-lien HPML thresholds, escrow for taxes

and any creditor-required hazard insurance was mandatory for ≥ 5 years (narrow § 1026.35(b)(2) exceptions). No TRID LE/CD claim is pled for this collateral class.

RMT carve-out (preserved): If the Court deems the deal a residential mortgage transaction (RMT) exempt from § 1635(e)(1), Plaintiffs do not seek § 1635 rescission and proceed for § 1640 damages and equitable relief (ATR/HPML, restitution/reformation, declaratory/injunctive). Judicial/equitable estoppel bars Defendants from invoking RMT to defeat rescission while simultaneously disclaiming "dwelling" on the face of the RIC.

## C. Facial Misclassification and Disclosure Defects

The RIC's "no-dwelling" covenant and "not for use in transactions secured by a dwelling" footer cannot waive federal rescission rights; the only permissible waiver is § 1026.23(e) (emergency). Declarations corroborate point-and-sign mechanics: the finance manager pointed only to signature lines, did not explain the 20-year term / 8.74% APR / TILA box, no keepable pre-consummation set was provided, and zero RTC copies were delivered to either obligor; none appear in the produced packet. Both obligors swear under penalty of perjury that they never received RTCs, satisfying Rule 56(c)(4).

RMT caveat: The RTC nondelivery theory is pled only if the transaction is non-RMT.

## D. ATR / HPML (independent of rescission; dwelling-secured prerequisite)

ATR. Defendants used a vehicle-loan template, failed to obtain SSA award letters, bank statements, tax filings, or long-term lot-rent documentation, and ignored mortgage-related obligations (tax/assessment equivalents, creditor-required hazard insurance, long-term lot/space rent, annual warranty renewal costs), rendering DTI/residual unsustainable. No ATR verification file or records were produced or retained as required by 12 C.F.R. § 1026.25(c)(2) (three-year retention of evidence of compliance), further evidencing noncompliance. By May 2026, Plaintiffs' $3,400 fixed income vs $4,484.03 obligations yields ≈ $1,084.03 monthly shortfall and DTI > 130%.

HPML / escrow. On the applicable rate-set date, the APR–APOR spread exceeded the first-lien HPML threshold; no escrow was established; M&T is not a small creditor. To avoid pleading variance, the

precise APOR figure is reserved to Exh. E (FFIEC APOR/rate-spread calculations) for summary judgment/trial; the spread met the threshold as pled. First-lien status is corroborated by the title identifying M&T as first lienholder (Exh. T).

### E. Timeliness and Notice

§ 1640 damages are timely via equitable tolling to 12/19/2024 (Krom — CE-Shop completion) and 02/22/2025 (Pauley — SAFE/NMLS exam), supported by the CE-Shop and NMLS exhibits and concealment/diligence allegations. Pauley's 12/23/2024 CFPB complaint (CFPB Complaint No. 241223-17585527) further corroborates diligence.

Rescission (non-RMT alternative) is timely: consummation 10/13/2023; written notice mailed 09/09/2025 (identifying parties, account/contract numbers, collateral, and consummation date). Under Jesinoski v. Countrywide, 574 U.S. 259 (2015), rescission is effected by notice, not filing; the 09/09/2025 mailing occurred well within the three-year repose period running to 10/13/2026. No tolling of § 1635(f) is asserted.

### F. Original-Creditor and Assignee Liability

Original-creditor theory. Initially payable to or table-funded for M&T (RIC p. 5; same-day assignment) → M&T is a TILA "creditor."

Assignee theory (alternative). The printed "no-dwelling" statements and the assignment language on the face of the RIC are apparent defects within § 1641(a). Any RTC nondelivery contention is asserted against the originating/closing creditor; rescission, if applicable, is enforceable against assignees under § 1641(c). Plaintiffs also assert § 1641(g) (assignment-notice) as an alternative claim.

### G. Elements Satisfied and Damages

Actual damages include the $8,200 down payment; $17,350.51 installments to date; $2,203 taxes (subset of total $4,661.12 projected/paid); $2,820 insurance; $19,550 lot leases; $3,500 repairs/supplies; and credit harms (score drop from the 700s to the low-400s), with a running ledger totaling ≈ $56,608.51.

Actual damages total approximately $56,608.51 through September 2025, subject to proof and a running ledger at trial.

Total payments if carried to term exceed $181,000.

## H. Tender, Equity, Interim Relief, and Arbitration/Choice-of-Law

Upon rescission, the security interest is void by notice; the Court may sequence/modify tender under § 1635(b)/§ 1026.23(d)(4) with offsets/credits for sums paid and collateral value. The Notice demanded lien release and return of payments within 20 days and stated Plaintiffs' willingness to tender on court-modified terms with offsets (down payment, installments, taxes, insurance, warranty renewals, lot rent). A status-quo injunction should bar repo/transfer/impairment and require furnishers to code the tradeline "consumer disputes," (injunctive relief sought under TILA/DJA; no private right under § 1681s-2(a)) with Rule 65(c) bond waived or nominal. For dwelling-secured loans, § 1639c(e) bars pre-dispute arbitration and forum-selection; any delegation/fee-shifting is alternatively unconscionable.

## I. Additional Record Hooks (Scienter/Tolling; Warranty/Registration Omission)

Comparator. Vanderbilt denied a comparable housing application in Sept. 2023; M&T approved one month later on the same financial profile (discoverable under Reg B retention), underscoring foreseeability.

Point-and-sign. Scott Marshall pointed only to signature lines; no keepable set was provided; no RTC to either obligor.

Warranty/registration anomaly. Dealer failed to register the VIN as "sold"; on 9/27/2024 the one-year warranty was retro-activated to expire 16 days later, corroborating concealment and diligence; repair out-of-pocket will be proven.

**Prayer for Relief — Count I.** Rescission (if non-RMT) with lien termination and equitable tender sequencing; § 1640 statutory/actual damages (including tax/assessment equivalents, creditor-required insurance, lot/space rent, and credit harms); declaratory/injunctive status-quo relief with Rule 65(c) waiver/nominal; if RMT: no § 1635 rescission—§ 1640 damages, reformation/restitution, and

declaratory/injunctive relief; fees/costs under § 1640(a)(3); assignee-specific relief (release of lien/clean title; assignment discovery; § 1641(g) where applicable).

---

## COUNT II

## VIOLATION OF THE ABILITY-TO-REPAY REQUIREMENT

(15 U.S.C. § 1639c; 12 C.F.R. § 1026.43 — Against making creditor(s); M&T "creditor" via initial payee/table-funding; assignee liability only as § 1641 permits)

**IV-2-1.** Incorporation. Sections I–III; RIC pages (including p. 3 dwelling prohibition, p. 5 assignment/footer); Exh. E (APOR/week-of-closing rate-spread screenshots); Exhs. NMLS-1/-2 (02/22/2025 SAFE MLO pass/record).

**IV-2-2.** Covered, dwelling-secured consumer credit. Closed-end, consumer-purpose; secured by Plaintiffs' principal dwelling whether or not attached to real property; full-time use by May 2024 (utilities/lot lease in Plaintiffs' names; USPS COA).

**IV-2-3.** Creditor status/assignee limits. Initially payable/assigned to M&T (RIC p. 5) → creditor; assignee exposure pled only for facially apparent violations under § 1641(a).

**IV-2-4.** No small-creditor carve-outs. M&T's size/volume/geography disqualify § 1026.35(b)(2) exceptions.

**IV-2-5. ATR duty & collateral-based-underwriting bar.** No SSA letters, bank statements, tax filings, or lot-rent verification were obtained; program treated the transaction as a vehicle loan despite dwelling indicators; no reasonable DTI/residual support. No evidentiary file demonstrating ATR verification was produced or retained as required by 12 C.F.R. § 1026.25(c)(2) (three-year record retention).

**IV-2-6. Verification failures (retirement & survivor income).** Gross receipts were treated as income; contemporaneous obligations (lot/space rent, creditor-required hazard insurance, taxes/assessments) were ignored; no contemporaneous DTI/residual analysis retained.

**IV-2-7. Inability to repay shown.** Forward look: $3,400 fixed income in May 2026 (retirement, living solely on combined Social Security income) vs $4,484.03 obligations → ≈ $1,084 shortfall; DTI > 130% at retirement on fixed income.

**IV-2-8. Red-flag comparator (Reg B retention).** Vanderbilt denial in Sept. 2023 underscores foreseeability; file discoverable.

**IV-2-9. QM safe-harbor/presumption.** Not available or rebutted by lack of reliable third-party verification; failure to account for third (3rd) year of 20-year loan (May 2026) retirement/survivor income; negative residual when mortgage-related obligations are included.

**IV-2-10. Arbitration/forum-selection.** Unenforceable for dwelling-secured loans by § 1639c(e); alternatively unconscionable.

**IV-2-11. Timeliness.** § 1640 damages equitably tolled to 12/19/2024 (Krom — CE-Shop completion) and 02/22/2025 (Pauley — SAFE/NMLS exam). Pauley's CFPB filing on 12/23/2024 (CFPB Complaint No. 241223-17585527) evidences diligence in pursuing remedies.

**IV-2-12. Violation. Approving an 8.74% APR, 20-year, $85,116 20-year "vehicle" loan without a documented, good-faith ATR determination violates § 1639c / § 1026.43(c).**

**IV-2-13.** Causation & damages. Payments; taxes/assessment equivalents; insurance; lot/space rent; warranty costs; credit harms; out-of-pocket ≈ $56,608.51 to date; running ledger continues (precise proof at trial).

**IV-2-14.** Official interpretations & functional analysis. "Dwelling" coverage applies whether or not attached to real property; functional principal-dwelling use controls.

**IV-2-15.** Standing/injunction. Loss of a principal dwelling is irreparable; a status-quo injunction with nominal bond is warranted. Injunctive relief here is sought under TILA and the Declaratory Judgment Act, not under the FCRA.

**IV-2-16.** Corroboration. Rescission packet (USPS receipts/affidavit), produced packet, NMLS discovery, warranty/registration timing, and title first-lien status corroborate notice, scienter, and tolling.

**IV-2-16A.** This exhibit summarizes the mandatory carrying costs associated with Plaintiffs' October 13, 2023 Retail Installment Contract, including loan payments and riders tied to the collateral (2022 Forest River Columbus River Ranch 392MB). These costs are material to Ability-to-Repay (15 U.S.C. § 1639c; 12 C.F.R. § 1026.43(c)) and HPML escrow obligations (12 C.F.R. § 1026.35(b)).

## IV-2-17. Carrying Costs Breakdown

Loan Payment: $755 / mo | $9,060 / yr

Lot Rent (Florida, avg. $1,000/mo): $1,000 / mo | $12,000 / yr

Hazard Insurance (creditor-required): $235 / mo | $2,820 / yr

Property Taxes: $183.58 / mo | $2,203 / yr

Warranty Renewal (industry avg.): $333.33 / mo | $4,000 / yr

Total Annual Costs: $30,083.00

**Total Monthly Costs: $2,506.92**

Note: The $2,506.92/month figure is the baseline derived from the table; where a conservative operational figure of ≈ $2,707/month appears elsewhere, it reflects variability in taxes/insurance/warranty premiums and is not outcome-determinative.

## IV-2-18. Debt-to-Income Analysis Demonstrates Foreseeable Default.

At the time of origination, Defendants knew or should have known that Plaintiffs—then aged 64 and 65— would retire by year three (3) of the 20-year loan and live solely on fixed Social Security income of approximately $3,400 per month. Plaintiffs' mandatory housing costs on the loan (loan payment, lot rent, hazard insurance, property taxes, and warranty) total approximately $2,506.92 per month, producing a housing debt-to-income ratio of ≈ 74%. When adding only the $1,200 truck note, Plaintiffs' fixed

obligations rise to approximately \$3,706.92 per month, or $\approx 109\%$ of income, before accounting for insurance, Medicare, cell phone, internet, food, gasoline, and other basic necessities. Such a debt structure makes default not merely likely but inevitable. Extending a dwelling-secured loan under these circumstances violates the Ability-to-Repay requirement, which mandates that creditors "make a reasonable and good faith determination of a consumer's ability to repay the loan according to its terms" (15 U.S.C. § 1639c(a); 12 C.F.R. § 1026.43(c)). The loan is therefore substantively unconscionable and per se unlawful under TILA/Regulation Z. (The $\approx 109\%$ figure excludes additional fixed obligations (e.g., utilities, Medicare premiums, communications), which raise total DTI above 130%.[FN1])

Prayer for Relief — Count II. § 1640 statutory/actual damages; equitable reformation/restitution; appropriate declaratory relief; fees/costs under § 1640(a)(3); interlock confirming no duplication with Count I rescission.

---

## COUNT III

### IV-3-1. UNCONSCIONABILITY & EQUITABLE / UDAP RELIEF

(Common law; FDUTPA; SCUTPA — Against All Defendants; Rule 8(d) alternatives preserved)

Venue/localization. SC closing; continuous FL principal-dwelling use since May 2024; payments and credit/collection effects localized in this District (personal jurisdiction and venue). FDUTPA applies to unfair/deceptive acts in Florida trade or commerce, Fla. Stat. § 501.204(1); SCUTPA applies to South Carolina trade or commerce, S.C. Code Ann. § 39-5-20(a).

Procedural unconscionability. No-dwelling boilerplate imposed despite known intended residential use; point-and-sign closing; two obligors; zero RTC; no keepable set.

### IV-3-2. Depreciation and Restitution Damages.

Beyond rendering the contract substantively unconscionable, the extreme depreciation of the collateral independently enlarges Plaintiffs' damages claim. A fifth-wheel RV depreciates by as much as 20–30% in

the first year of ownership, with resale values falling faster than loan amortization. As a result, even after making significant down payments and monthly installments, Plaintiffs were left in a position of negative equity from inception, where the fair market value of the RV was consistently less than the outstanding loan balance. This condition is not temporary but structural: the depreciation curve guarantees that Plaintiffs will never be able to sell or trade the RV for a sum sufficient to discharge the loan. NADA/KBB printouts for the model/year are attached as Exh. DEP-1 to corroborate depreciation ranges.

**IV-3-3.** Such circumstances inflate restitution because every dollar Plaintiffs have paid—and continue to pay—exceeds the retained market value of the collateral. Under 15 U.S.C. § 1635(b) and 12 C.F.R. § 1026.23(d), rescission requires the creditor to return all payments received, with the Court empowered to adjust tender obligations to reflect the diminished and unrecoverable value of the collateral. Likewise, under 15 U.S.C. § 1640(a)(1), Plaintiffs are entitled to actual damages measured by the difference between what they paid and the fair value of the goods received. The accelerated depreciation further demonstrates that Defendants' lending practices stripped equity from Plaintiffs, violating the prohibition on equity-stripping and unaffordable loans codified in 15 U.S.C. § 1639c(a) and implemented through the Ability-to-Repay Rule (12 C.F.R. § 1026.43).

**IV-3-4. Quantified Depreciation Analysis.**

Industry valuation guides such as NADA RV Guides and Kelley Blue Book confirm that fifth-wheel recreational vehicles depreciate dramatically in their first years. Empirical data shows a 20–30% loss of value in the first year alone, followed by continued annual depreciation of approximately 8–10%. Applied to Plaintiffs' unit — the 2022 Forest River Columbus River Ranch 392MB, financed at a base price of $85,116 — the following value trajectory is foreseeable and was knowable to Defendants at origination:

Year | Loan Balance (approx.) | Market Value (est.) | Negative Equity (Underwater)

Origination (10/2023) | $85,116 | $85,116 | $0

Year 1 (10/2024) | ≈ $82,000 | ≈ $59,600 (30% depreciation) | –$22,400

Year 2 (10/2025) | ≈ $79,000 | ≈ $54,000 | –$25,000

Year 3 (10/2026) | ≈ $76,000 | ≈ $49,000 | –$27,000

Loan balance assumes regular amortization without prepayment; values are rounded for clarity.

**IV-3-4A.** This evidence demonstrates that by year one, Plaintiffs were already more than $22,000 underwater; by year three — coinciding with their retirement and sole reliance on Social Security income — negative equity exceeds $27,000. The asset's value collapses faster than the loan amortizes, locking Plaintiffs into a loan they can neither afford nor exit.

**IV-3-4B.** Under 15 U.S.C. § 1635(b) and 12 C.F.R. § 1026.23(d), rescission requires return of all sums paid, with the Court empowered to modify tender to account for unrecoverable depreciation. Moreover, 15 U.S.C. § 1640(a)(1) entitles Plaintiffs to actual damages, which include the delta between the payments made and the collateral's diminished market value. This Court has equitable authority to recognize that Plaintiffs' restitution claim must include both the direct payments and the embedded depreciation loss that was foreseeable to Defendants at origination.

**IV-3-5. Elder / Foreseeability of Default.**

Plaintiffs were ages 65 and 64, respectively, at the time of closing on October 13, 2023. The creditor had full knowledge of their age, financial profile, and imminent retirement within the early years of the loan term. Indeed, just one month prior, Vanderbilt Mortgage & Finance, Inc. had denied Plaintiffs' application for a housing-secured loan, citing creditworthiness and repayment concerns. By contrast, M&T Bank, through Blue Compass RV, approved a substantially riskier 20-year "vehicle loan" at 8.74% APR. The stark contrast between Vanderbilt's denial and M&T's approval underscores the foreseeability of Plaintiffs' inability to repay, especially as their debt-to-income ratio was projected to exceed 130% once they transitioned to fixed Social Security income by the third year of the loan. Courts have consistently held that knowingly extending unaffordable loans to elderly consumers demonstrates reckless disregard for ability-to-repay obligations (see 15 U.S.C. § 1639c; 12 C.F.R. § 1026.43(c)).

### IV-3-6. Warranty Omission and Concealment.

Defendants further compounded the harm by failing to timely mark the VIN as "sold" in Blue Compass' warranty registration system. As a result, the factory warranty on the unit was not activated until September 27, 2024—retroactively leaving only 16 days of coverage before expiration. This omission was both material and deceptive, as Plaintiffs were led to believe they had a full one-year warranty from the October 2023 date of purchase. Instead, the retroactive activation deprived Plaintiffs of nearly a full year of coverage, a concealment that directly increased their out-of-pocket repair risk and exemplifies unfair and deceptive trade practices under FDUTPA, Fla. Stat. § 501.204(1), and SCUTPA, S.C. Code Ann. § 39-5-20(a).

### IV-3-7. Rule 9(b) Particulars — Fraud Pleading Standard.

To satisfy Fed. R. Civ. P. 9(b), Plaintiffs plead fraud with specificity: who, what, when, where, and how. The misrepresentations and omissions were made by Scott Marshall, an employee of Blue Compass RV, at the closing desk of the Lexington, South Carolina dealership on October 13, 2023, between approximately 2:10 p.m. and 2:35 p.m. During this interaction, Marshall omitted mandatory disclosures and affirmatively misled Plaintiffs by half-truths regarding:

A. the true length and cost of the loan (20 years, with total payments exceeding $181,000),

B. the impact of required housing-related add-ons (lot rent, insurance, and warranty costs), and

C. Plaintiffs' federal regulatory rights, including rescission rights under 15 U.S.C. § 1635 and the Ability-to-Repay standards under 15 U.S.C. § 1639c.

These omissions and misleading statements induced Plaintiffs into executing the Retail Installment Contract under false pretenses, satisfying the heightened pleading standard of Rule 9(b). Defendants knew or recklessly disregarded that Plaintiffs would default given their age, fixed-income horizon, and required carrying costs (reinforced by the Vanderbilt denial).

**IV-3-8. Remedies Requested.**

Given these violations, Plaintiffs seek the following relief, each grounded in statute or rule:

**a. Equitable Rescission of the October 13, 2023 Retail Installment Contract under 15 U.S.C. § 1635(b) and 12 C.F.R. § 1026.23(d), including the Court's authority to modify tender sequence and amounts pursuant to § 1635(b)/§ 1026.23(d)(4).**

b. Contract Reformation to strike unlawful provisions, consistent with federal equitable powers and state-law doctrines preventing enforcement of unconscionable contracts.

**c. Restitution of all payments, taxes, insurance, warranty costs, and long-term lot rent retained by Defendants, as authorized by 15 U.S.C. § 1640(a)(1) (TILA actual damages) and common-law restitution principles.**

d. Status-Quo Injunction under Fed. R. Civ. P. 65, enjoining repossession, lien enforcement, or derogatory credit reporting during litigation, with bond waived or nominal pursuant to Rule 65(c) given Plaintiffs' indigency.

**e. FDUTPA Relief — actual damages and attorney's fees under Fla. Stat. § 501.2105, recognizing that punitive damages are barred under FDUTPA.**

• SCUTPA Relief — treble damages and attorney's fees under S.C. Code Ann. § 39-5-140(a), which mandates trebling for willful or knowing violations.

**f. Declaratory Relief under 28 U.S.C. §§ 2201–2202, declaring: (i) Plaintiffs' rescission of September 9, 2025 voided the lien by operation of law; (ii) Defendants' continued collection, reporting, or enforcement activity is unlawful pending judicial determination; and (iii) the Court's equitable authority extends to setting tender terms and offsets.**

Prayer for Relief — Count III. As above.

## COUNT IV

## FRAUDULENT CONCEALMENT & EQUITABLE TOLLING

(Against All Defendants; pled under TILA and, in the alternative, FDUTPA/SCUTPA; Rule 8(d) alternatives preserved)

**IV-4-1.** This Count consolidates and supersedes any separate tolling count.

**IV-4-2.** Concealment. Defendants misclassified the transaction as a vehicle loan and printed "no-dwelling" (RIC p. 3) and "Not for use in transactions secured by a dwelling" footers (RIC pp. 1–5). Two obligors signed; no keepable pre-consummation set was provided and no RTC copies were delivered; none appear in the produced packet.

**IV-4-3.** Discovery/Tolling. Plaintiffs first discovered the violations on 12/19/2024 (Krom — CE-Shop Certificate of Course Completion) and 02/22/2025 (Pauley — SAFE/NMLS exam; Pauley's course completion 11/24/2024 documented by CE-Shop Certificate). On 12/23/2024, Pauley electronically submitted her first CFPB complaint (CFPB Complaint No. 241223-17585527) as part of her diligence. Plaintiffs plead equitable tolling of 15 U.S.C. § 1640(e) damages to those dates. § 1635(f) repose is not tolled; rescission (non-RMT) was timely noticed 09/09/2025.

**IV-4-4.** Warranty anomaly. Dealer failed to mark the VIN "sold"; on 9/27/2024 the one-year warranty was retro-activated to 10/13/2023, leaving 16 days of coverage, corroborating concealment and diligence.

**Prayer for Relief — Count IV.** Declaration that damages limitations are tolled to the later of 12/19/2024 or 02/22/2025; rescission (if non-RMT) with termination of security interest and equitable tender offsets; restitution and actual damages (including credit harms); fees/costs as allowed.

---

## IV-4-5. COUNT IV-A (RESTATED — NO ADDITIONAL RELIEF SOUGHT)

## FRAUDULENT CONCEALMENT & EQUITABLE TOLLING

(Against All Defendants; pled under TILA and, in the alternative, FDUTPA/SCUTPA; Rule 8(d) alternatives preserved)

**IV-4-6.** This count is pled in the alternative for redundancy preservation only under Rule 8(d); it seeks no relief beyond Count IV. Alternative formulations are included intentionally to avoid waiver.

Concealment. Misclassification as vehicle loan; "no dwelling" covenant (RIC p. 3) and "not for use…" footers (pp. 1–5); no RTC and no keepable set (two obligors; zero RTC; none in packet).

**IV-4-7.** Discovery/Tolling. Plaintiffs first discovered the violations on 12/19/2024 (Krom — CE-Shop Certificate of Course Completion) and 02/22/2025 (Pauley — SAFE/NMLS exam; with 11/24/2024 CE-Shop course completion). Pauley also filed a CFPB complaint on 12/23/2024 (CFPB Complaint No. 241223-17585527) demonstrating diligence. Damages claims are tolled to those dates; § 1635(f) is not tolled, and Plaintiffs timely mailed 09/09/2025 rescission.

Warranty anomaly. VIN not marked "sold"; warranty retro-activated 9/27/2024 leaving 16 days of coverage, corroborating concealment.

**Prayer for Relief — Count IV-A.** Rescission (if non-RMT) and termination of security interest; restitution; actual damages (incl. credit harms); declaration that damages limitations are tolled to the later of 12/19/2024 or 02/22/2025; clean title subject to equitable tender offsets; fees.

## COUNT V

## HIGHER-PRICED MORTGAGE LOAN (HPML) — ESCROW & RELATED RELIEF

(12 C.F.R. § 1026.35; 15 U.S.C. § 1639d; pled in the alternative under Rule 8(d))

**IV-5-1. Threshold/Spread.** On the rate-set date the APR–APOR spread exceeded 1.5 p.p. for a first-lien HPML; no escrow for property taxes or creditor-required hazard insurance was established; M&T is not a small creditor (Exh. E; judicially noticeable size/volume). First-lien is corroborated by Exh. T (title). Per Official Staff Commentary § 1026.35(b)(1)-1, "dwelling" includes mobile/manufactured homes regardless of whether attached to real property; first-lien chattel loans on a principal dwelling are covered.

Scope caveat (preserved). If the Court finds § 1026.35(b) inapplicable to a chattel-secured principal dwelling (e.g., definitional issues re "property tax" or "first lien"), Plaintiffs seek equitable reformation/restitution and FDUTPA/SCUTPA alternatives addressing the same conduct without double-counting.

**Prayer for Relief — Count V.** Declaration of HPML status/violation; reformation to implement escrow and restitution of out-of-pocket taxes/insurance; § 1640 damages; status-quo injunction; (if non-RMT) rescission with equitable tender; fees.

---

## COUNT VI

## FRAUDULENT MISREPRESENTATION AND OMISSION

(Against All Defendants; under Federal Law, FDUTPA, and SCUTPA; pled in the alternative under Rule 8(d))

**IV-6-1. Misrepresentations/Omissions.** No-dwelling disclaimers despite intended principal-dwelling use; concealment of foreseeable housing costs (taxes, long-term lot/space rent, creditor-required hazard insurance, warranty renewals); treatment of gross receipts as income; point-and-sign closing with no keepable set and no RTC (none in packet).

37

Scienter. "No-dwelling" + vehicle-loan template for a 20-year first-lien product; continued furnishing while ignoring the 09/09/2025 written Notice (addresses and account/contract identifiers in packet). Defendants knew or recklessly disregarded that Plaintiffs would default given their age, fixed-income horizon, and mandatory carrying costs (as flagged by the Vanderbilt denial).

**IV-6-2.** Damages. Down payment; $754 monthly installments; taxes/insurance; warranty renewals; lot rent; severe credit decline (700s → low-400s).

**Prayer for Relief — Count VI.** Rescission (if non-RMT) and equitable sequencing; restitution and compensatory damages; fees/costs; FDUTPA (no punitive); SCUTPA trebling reserved for willfulness; equitable tender-offset relief.

---

## COUNT VII

## FAIR CREDIT REPORTING ACT (FCRA) — FURNISHER DUTIES AFTER CRA DISPUTE; RELATED TILA/DECLARATORY RELIEF

(15 U.S.C. §§ 1681s-2(b), 1681n, 1681o — Against All Furnishing Defendants; Rule 8(d) alternatives preserved)

**IV-7-1.** Scope/preemption. Plaintiffs proceed only under § 1681s-2(b) (post-dispute furnisher duties); no preempted state-law claims regulating reporting content; no private FCRA injunction is sought (status-quo relief is pled under TILA (15 U.S.C. § 1635(b)) and the Declaratory Judgment Act (28 U.S.C. §§ 2201–2202)).

**IV-7-2.** Disputes/notice. In 2025, Plaintiffs lodged written disputes with one or more CRAs; ACDVs were forwarded to furnishers identifying the 10/13/2023 RIC as misclassified dwelling credit, reporting inaccuracies in light of the 09/09/2025 rescission and failure to code "consumer disputes." Furnisher responses and derogatory tradelines were directed to 1431 S. Kingsway Road, #32, Seffner, FL 33584, localizing injury.

Violations. Furnishers failed to conduct a reasonable investigation; failed to review all information supplied; re-reported derogatories; failed to mark disputed or correct status/balance consistent with rescission/tender sequencing.

**IV-7-3.** Damages. Diminished credit scores; adverse action/lost refinancing; higher credit/insurance costs; emotional distress/inconvenience; out-of-pocket losses.

**Prayer for Relief — Count VII.** Actual damages and, for willfulness, statutory/punitive damages; fees/costs; non-FCRA status-quo relief (tradeline coded "consumer disputes," halt new derogatories) consistent with TILA/DJA.

---

# COUNT VIII

## DECLARATORY & INJUNCTIVE RELIEF (STATUS-QUO; TENDER SEQUENCING; NON-PAYMENT DURING LITIGATION)

(28 U.S.C. §§ 2201–02; Fed. R. Civ. P. 65; aligned with TILA §§ 1635(b), 1640(a)(3))

**IV-8-1.** An actual controversy exists following the 09/09/2025 rescission (non-RMT path). § 1635(b) voids the lien by notice subject to § 1026.23(d)(4) tender sequencing. Plaintiffs seek declarations on: (a) rescission effect and tender order/offsets; (b) "consumer disputes" coding during adjudication; and (c) maintaining the status-quo (no repossession/transfer/impairment) with Rule 65(c) waiver or nominal bond not exceeding $100, given Plaintiffs' indigency and the public interest in consumer-protection enforcement. Mailing details and Certified-Mail proof are in the record.

**Prayer for Relief — Count VIII.** Declaratory judgment confirming rescission effect and tender sequencing; preliminary/permanent injunction preserving status-quo and requiring "consumer disputes" coding; Rule 65(c) waiver or nominal bond not exceeding $100; fees/costs as allowed (including § 1640(a)(3)).

---

39

## SECTION V — CONSOLIDATED PRAYER FOR RELIEF

**Preface.** Plaintiffs incorporate all prior allegations and prayers. Remedies below are requested without duplication and under Fed. R. Civ. P. 8(d) alternatives, so the Court may award the complete but non-overlapping relief supported by the evidence and governing law.

**Applicability.** Each form of relief is directly tailored to the October 13, 2023 Retail Installment Contract for Plaintiffs' principal dwelling, which was misclassified as a "vehicle loan," triggering overlapping rights of rescission, restitution, damages, and equitable remedies under federal and state statutes.

### A. Rescission, Title, and Tender Sequencing (TILA / Reg Z / Equity)

**1.** Rescission of the October 13, 2023 Retail Installment Contract pursuant to 15 U.S.C. § 1635(a) and 12 C.F.R. § 1026.23(a)(3), which grant consumers a three-year extended right of rescission when the creditor fails to deliver required disclosures and Right-to-Cancel forms.

**2.** Declaration that the lien is void effective upon Plaintiffs' written Notice of Rescission mailed September 9, 2025, with the Court exercising equitable power under 15 U.S.C. § 1635(b) and 12 C.F.R. § 1026.23(d)(4) to determine tender sequence and apply offsets for all sums already paid (down payment, installments, taxes, insurance, warranty renewals, and long-term lot rent).

**3.** Entry of an order directing the Florida Department of Highway Safety and Motor Vehicles, or other appropriate titling authority, to issue a certificate of title for the 2022 Forest River Columbus River Ranch 392MB, VIN 4X4FCMR21N6013478, free and clear of lien, consistent with 15 U.S.C. § 1635(b).

### B. Monetary Relief (Damages / Restitution)

**4.** Restitution of all monies paid on the contract and related carrying costs, as required by 15 U.S.C. § 1635(b) (rescission restores parties to status quo ante) and equitable restitution doctrines.

**5.** Actual damages recoverable under 15 U.S.C. § 1640(a)(1) (TILA) and 15 U.S.C. §§ 1681n, 1681o (FCRA), including: (a) Out-of-pocket losses (payments, taxes, insurance, repairs, and lot rent); (b) Credit-score decline and loss of creditworthiness from unlawful reporting (§ 1681s-2(b)); (c) Adverse credit

actions and refinancing denials (15 U.S.C. § 1681a(k); § 1681m(a)); (d) Increased costs of credit/insurance traceable to inaccurate furnishing (§§ 1681n–o); and (e) Emotional distress and humiliation, recognized as compensable under the FCRA (Cousin v. Trans Union Corp., 246 F.3d 359 (5th Cir. 2001)).

**6.** Statutory damages as authorized by 15 U.S.C. § 1640(a)(2)(A)(i)–(iv) (TILA disclosure violations), 15 U.S.C. §§ 1681n(a)(1)(A), 1681o(a)(1) (FCRA willful/negligent violations), Fla. Stat. § 501.2105 (FDUTPA actual damages and fees), and S.C. Code Ann. § 39-5-140(a) (SCUTPA trebling for willfulness).

**7. Punitive damages where permitted: 15 U.S.C. § 1681n(a)(2) (FCRA willful violations), common-law fraud/fraudulent concealment (subject to due-process guideposts in BMW v. Gore, 517 U.S. 559 (1996); State Farm v. Campbell, 538 U.S. 408 (2003)), and SCUTPA trebling of actual damages upon a showing of willfulness (§ 39-5-140(a)).**

**8.** Recovery of reasonable fees and costs under 15 U.S.C. § 1640(a)(3) (TILA), 15 U.S.C. §§ 1681n(c), 1681o(a)(2) (FCRA), Fla. Stat. § 501.2105 (FDUTPA), and S.C. Code Ann. § 39-5-140(a) (SCUTPA).

## C. Declaratory & Injunctive Relief (Status-Quo; Non-Payment During Litigation)

**9.** Declaratory judgment under 28 U.S.C. §§ 2201–02 confirming: (a) Plaintiffs' rescission of September 9, 2025 voided the lien by operation of law (Jesinoski v. Countrywide Home Loans, Inc., 574 U.S. 259 (2015)); (b) The Court's equitable authority under 15 U.S.C. § 1635(b)/12 C.F.R. § 1026.23(d)(4) to set tender terms and apply offsets; and (c) Collection or repossession efforts on the rescinded account are unlawful during adjudication.

**10.** Relief under Fed. R. Civ. P. 65 enjoining repossession, transfer, or impairment of the collateral; requiring furnishers to code tradelines "in dispute" (15 U.S.C. § 1681s-2(a)(3)) (injunctive relief sought under TILA/DJA, not as a private cause under § 1681s-2(a)); and barring new derogatories until equitable tender is resolved. Rule 65(c) security should be waived or nominal given Plaintiffs' indigency.

**11.** Declaration that, consistent with rescission under § 1635(b) and pending judicial tender sequencing, Plaintiffs are not required to continue making monthly payments during the pendency of this action, with final reconciliation to occur in the Court's judgment.

**12.** Relief confirming Defendants' statutory duties as furnishers under 15 U.S.C. § 1681s-2(b) after CRA dispute notice, including investigation and correction of inaccurate tradelines, with status-quo injunctive orders imposed under non-FCRA law to prevent ongoing harm.

**D. Tolling & Miscellaneous**

**13.** Declaration that limitations periods are tolled until February 22, 2025 due to Defendants' fraudulent concealment and Plaintiffs' delayed discovery of violations, consistent with equitable doctrines and the discovery rule under 15 U.S.C. § 1681p (FCRA) and state-law statutes.

**14.** Any further relief the Court deems just and proper to effectuate rescission, restitution, damages, and equity, consistent with Fed. R. Civ. P. 54(c).

**15.** Request that this matter be given priority status, as default is projected by May 2026 absent relief, creating irreparable risk of homelessness and uncompensable loss of Plaintiffs' principal dwelling.

---

**SECTION VI — CONCLUSION**

Plaintiffs are elderly retirees who have lived full-time in the collateral since May 2024. The loan was misclassified to evade consumer protections, closed without required disclosures/RTC, and approved without a good-faith ATR determination while also failing HPML escrow safeguards. The evidence and governing law support rescission with equitable tender, restitution, and damages, together with narrowly tailored status-quo injunctive relief to prevent irreparable loss of a principal dwelling. Plaintiffs respectfully request entry of judgment consistent with the Consolidated Prayer above.

---

## SECTION VII — JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury on all triable issues.

## SECTION VIII — SIGNATURES

Respectfully submitted this 9th day of September 2025.

/s/ Jean Pauley

Jean Pauley, Pro Se Plaintiff

1431 S. Kingsway Road, #32

Seffner, Florida 33584

Tel: (803) 766-9866

Email: jeanpauley@yahoo.com

/s/ Rick Krom

Rick Krom, Pro Se Plaintiff

1431 S. Kingsway Road, #32

Seffner, Florida 33584

Tel: (803) 869-2104

Email: permex816@gmail.com

Reservation of Counsel. Plaintiffs appear pro se but reserve the right to retain counsel for mediation, dispositive motions, and/or trial. If counsel appears, Plaintiffs seek fees/costs where authorized, including 15 U.S.C. § 1640(a)(3), Fla. Stat. § 501.2105, and S.C. Code Ann. § 39-5-140.

## SECTION IX — VERIFICATION AND UNSWORN DECLARATION

Pursuant to 28 U.S.C. § 1746

We, Jean Pauley and Rick Krom, are the Plaintiffs in this Verified Civil Complaint. We have read the Complaint, and to the best of our knowledge, information, and belief, formed after reasonable inquiry, the factual allegations are true and correct.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 9th day of September 2025, in Hillsborough County, Florida.

Jean Pauley

Rick Krom

## SECTION X — CERTIFICATE OF SERVICE

### CERTIFICATE OF SERVICE

I certify that on September 9, 2025, a true and correct copy of VERIFIED CIVIL COMPLAINT FOR VIOLATIONS OF THE TRUTH IN LENDING ACT (TILA) AND REGULATION Z; AND RELATED STATE-LAW CLAIMS (JURY TRIAL DEMANDED) **together with the Summons** was served by U.S. Certified Mail, Return Receipt Requested and, if registered, by CM/ECF, upon:

**Service upon the registered agents is intended as service of process pursuant to Fed. R. Civ. P. 4(h)(1)(B) and applicable state law.**

**Service is directed to the following registered agents as agents for service of process (Summons enclosed).**

M&T Bank
c/o Corporation Service Company, Registered Agent
1201 Hays Street, Tallahassee, FL 32301
USPS Certified Mail No.: 9589 0710 5270 2801 7016 95

M&T Bank Corporation (Headquarters – Courtesy Copy)
One M&T Plaza, Buffalo, NY 14203
USPS Certified Mail No.: 9589 0710 5270 2801 7021 66

Blue Compass RV, LLC
c/o C T Corporation System, Registered Agent
1200 South Pine Island Road, Plantation, FL 33324
USPS Certified Mail No.: 9589 0710 5270 2801 7021 73

Blue Compass RV, LLC
c/o Corporation Service Company, Registered Agent
508 Meeting Street, West Columbia, SC 29169
USPS Certified Mail No.: 9589 0710 5270 2801 7021 80

Blue Compass RV, LLC (Principal Office – Courtesy Copy)
301 East Las Olas Blvd, Suite 700, Fort Lauderdale, FL 33301
USPS Certified Mail No.: 9589 0710 5270 2801 7021 97

Blue Compass RV – Lexington Dealership (Seller Location)
165 Business Park Drive, Lexington, SC 29072
USPS Certified Mail No.: 9589 0710 5270 2801 7016 88

/s/ Jean Pauley
Jean Pauley, Plaintiff Pro Se
1431 S. Kingsway Rd. #32
Seffner, FL 33584
Tel: 803-766-9866
Email: jeanpauley@yahoo.com

/ s / Rick Krom
Rick Krom, Plaintiff Pro Se
1431 S. Kingsway Rd. #32
Seffner, FL 33584; Tel: 803-869-2104
Email: permex816@gmail.com

45

## EXHIBIT & APPENDIX INDEX
*(Filed with Verified Civil Complaint, September 2025)*

1. Exhibit RIC-1 through RIC-5 — Retail Installment Contract (pages cited throughout Complaint).
2. Exhibit ASSN-1 — Assignment/Endorsement pages identifying M&T Bank.
3. Exhibit RESC-1 — Plaintiffs' Notice of Rescission and USPS Certified Mail Proofs.
4. Exhibit T — Certificate of Title listing M&T Bank as first lienholder.
5. Exhibit BC-WARR-1, BC-WARR-2 — Warranty registration correspondence (retro-activation issue).
6. Exhibit DEP-1 — NADA / Kelley Blue Book depreciation guides.
7. Exhibit DAM-1 — Running damages ledger (payments, taxes, insurance, repairs).
8. Exhibit JEP-Decl. — Declaration of Jean Pauley.
9. Exhibit RLK-Decl. — Declaration of Rick Krom.
10. Appendix A — One-Page Hearing Script (Section III reference).
11. Any other referenced exhibits (e.g., CFPB complaint filings, CE-Shop/NMLS certifications) to be filed or served as appropriate.

---

**Note:** Not all exhibits and appendices are filed with the initial Complaint. Some will be served with the Summons and included in Plaintiffs' service packets, with full copies available upon request.